# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO: 9:18-cv-81448-SINGHAL

JENNIFER TUNG, Individually and on Behalf
of All Others Similarly Situated,

      Plaintiff,

v.

DYCOM INDUSTRIES, INC., STEVEN E.
NIELSEN and ANDREW DEFERRARI,

      Defendants.

_____/


## LEAD PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

I.      PROCEDURAL HISTORY OF THE CASE ................................................... 2

II.     NEGOTIATION AND TERMS OF THE PROPOSED SETTLEMENT ......................... 3

ARGUMENT ........................................................................................................ 3

I.      STANDARDS FOR PRELIMINARY APPROVAL OF THE SETTLEMENT............... 3

II.     NOTICE IS WARRANTED AS THE SETTLEMENT IS FAIR, REASONABLE,
        AND ADEQUATE PURSUANT TO RULE 23(e)(2) ........................................ 6

        A.      Lead Plaintiff and Lead Counsel Adequately Represented the Settlement
                Class ...........................................................................................6

        B.      The Settlement Was Negotiated at Arm's-Length..................................7

        C.      The Relief Provided by the Settlement Is Adequate ...............................7

                1.      This Settlement Is Well Within the Range of Reasonableness...................7

                2.      The Effective Process for Distributing Relief.............................9

                3.      The Anticipated Attorneys' Fees and Expenses Are Reasonable............10

        D.      Settlement Class Members Are Treated Equitably Relative to One Another.......11

III.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS ........................ 11

        A.      The Settlement Class Meets the Requirements of Rule 23(a) ..............11

                1.      Rule 23(a): Numerosity...........................................................11

                2.      Rule 23(a)(2):  Questions of Law or Fact Are Common ..........................12

                3.      Rule 23(a)(3): Lead Plaintiff's Claims Are Typical .................................12

                4.      Rule 23(a)(4):  Lead Plaintiff Is An Adequate Representatives ...............13

        B.      The Settlement Class Meets the Requirements of Rule 23(b)(3) –
                Predominance and Superiority ...............................................................13

IV.     NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE
        PSLRA REQUIREMENTS ........................................................................... 14

        CONCLUSION....................................................................................... 16

## **TABLE OF AUTHORITIES**

**CASES**                                                                                 **PAGE(S)**

*Affiliated Ute Citizens of Utah* v. *United States*, 406 U.S. 128 (1972)................................... 13, 14

*Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591 (1997)................................................. 13

*Basic Inc.* v. *Levinson*, 485 U.S. 224 (1988) ............................................................ 14

*Bennett* v. *Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ..................................... 4, 5, 7

*Borcea* v. *Carnival Corp.*, 238 F.R.D. 664 (S.D Fla. 2006)........................................ 11

*Canupp* v. *Liberty Behavioral Health Corp.*, 417 Fed. App'x 843 (11th Cir. 2011) ................... 5

*In re Checking Account Overdraft Litigation*, 275 F.R.D. 654 (S.D. Fla. 2011) ...................... 4, 5

*In re Coronavirus Public Emergency*, Administrative Order 2020-24 (S.D. Fla. Apr. 3, 2020) ... 2

*Cox.* v. *Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ................................. 12

*Dukes* v. *Air Canada*, 2020 WL 496144 (M.D. Fla. Jan. 30, 2020) ........................... 10

*Florida Educ. Ass'n* v. *Dept. of Education*, 2019 WL 8272779 (N.D. Fla. Nov. 4, 2019) ........ 7, 9

*Fresco* v. *Auto Data Direct, Inc.*, 2007 WL 2330895 (S.D. Fla. May 14, 2007) .......................... 4

*Hanley* v. *Tampa Bay Sports & Entm't LLC*, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)...... 11

*In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854 (11th Cir. 2009) ............................... 4

*Lake* v. *First Nationwide Bank*, 900 F. Supp. 726 (E.D. Pa. 1995)................................ 7

*Lee* v. *Ocwen Loan Servicing, LLC*, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015).................... 14

*Murray* v. *Auslander*, 244 F.3d 807 (11th Cir. 2001)................................................ 12

*In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656 (N.D. Ga. 2009) ................................. 12

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ................. 6

*In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529 (N.D. Cal. June 30, 2007).................. 7

*Possick* v. *Dycom Industries, Inc., et al.*, No. 9:18-cv-81480 ...................................... 2

*In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp.2d 1315 (N.D. Ga. 2007) ............. 11, 13, 14

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001)................................. 4

*Thorpe* v. *Walter Investment Management Corp.*, 2016 WL 10518902
  (S.D. Fla. Oct. 17, 2016) ....................................................................................... 8

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) ........................................... 4

**STATUTES**

15 U.S.C. § 78u-4(a)(7)(A)-(F) .................................................................................. 15

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................... 13

**RULES**

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

**OTHER AUTHORITIES**

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*,
  7 J. EMPIRICAL LEGAL STUD. 811-846 (2010) ................................................. 10

Eisenberg, Miller & Germano, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. L.
  REV. 937 (2017) .................................................................................................. 10

Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2019
  Review and Analysis (Cornerstone Research 2020) ............................................. 7

Lead Plaintiff the Boston Retirement System ("Lead Plaintiff"), on behalf of itself and the proposed Settlement Class, hereby moves this Court for an Order pursuant to Federal Rule of Civil Procedure 23: (i) preliminarily approving the proposed Settlement; (ii) preliminarily certifying the Settlement Class and appointing Lead Plaintiff as Class representative and Lead Counsel as Class Counsel, for purposes of settlement; (iii) approving the form, content and manner of providing notice to the Settlement Class; (iv) setting a hearing date to consider final approval of the Settlement, approval of the Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and litigation expenses (the "Settlement Hearing"); (v) appointing A.B. Data, Ltd. as the Claims Administrator to administer the notice and claims process; and (vi) granting such other and further relief as the Court may deem fair and proper.[1]

This motion is based on the accompanying Memorandum of Points and Authorities and the Declaration of Guillaume Buell, dated June 26, 2020, with annexed exhibits, filed herewith. A proposed Order, which was negotiated by the Parties to the Settlement, is also submitted as Exhibit A to the Stipulation. Defendants do not oppose the relief requested in this motion.

## PRELIMINARY STATEMENT

Lead Plaintiff respectfully submits that the Settlement is a very favorable result for the Settlement Class, and the Court should preliminarily approve it. The Settlement provides a recovery of $9,500,000 in cash to resolve claims against Defendants Dycom Industries, Inc. ("Dycom," or "the Company"), Steven E. Nielsen, and Andrew DeFerrari (the "Individual Defendants," and with Dycom, "Defendants") in the Action. Lead Plaintiff seeks preliminary approval of the Settlement so that notice may be provided to the Settlement Class and the Settlement Hearing can be scheduled. In light of conditions related to COVID-19, Lead Plaintiff would not oppose allowing parties that wish to do so to participate in the Settlement Hearing by

---

[1]     All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated as of June 25, 2020 (the "Stipulation"), filed herewith as Exhibit 1 to the Declaration of Guillaume Buell ("Buell Decl."). All exhibits referenced below are attached to the Buell Declaration.

telephone or video conference. *See In re Coronavirus Public Emergency*, Administrative Order 2020-24, ¶8 (S.D. Fla. Apr. 3, 2020).

Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected Mediator, represents a favorable recovery that falls well within the range of approval, and meets the factors required by Federal Rule of Civil Procedure 23(e).

Entry of the proposed Preliminary Approval Order will begin the process of considering final approval by authorizing notice of the Settlement to members of the Settlement Class. A final Settlement Hearing will then be conducted, after the Settlement Class has been given an opportunity to object or seek exclusion, so that the Court can make a final determination as to whether the Settlement is fair, reasonable, and adequate.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. PROCEDURAL HISTORY OF THE CASE

On October 25, 2018, the above-captioned securities class action (the "Action") was filed in the United States District Court for the Southern District of Florida on behalf of all investors who purchased or otherwise acquired Dycom common stock between November 20, 2017, and August 10, 2018, inclusive. On October 30, 2018, a similar action captioned *Possick* v. *Dycom Industries, Inc., et al.*, No. 9:18-cv-81480 (the "*Possick* Action") was also filed in this Court, seeking the same relief.

On January 10, 2019, the Court issued an Order consolidating the *Possick* Action with this Action and ordered all future filings to be in this Action. On January 11, 2019, the Court issued an Order: (i) appointing the Boston Retirement System as Lead Plaintiff for the proposed class; and (ii) appointing Levi & Korsinsky LLP and Thornton Law Firm LLP as Lead Counsel, and Cullin O'Brien Law, P.A. as Liaison Counsel.

On March 13, 2019, Lead Plaintiff filed an Amended Class Action Complaint, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"),

and United States Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, against Defendants, on behalf of itself and all other persons similarly situated who purchased or otherwise acquired Dycom common stock between November 20, 2017, and August 10, 2018, inclusive.

Defendants filed a motion to dismiss the amended complaint on April 19, 2019, which Lead Plaintiff opposed on May 20, 2019. On June 3, 2019, Defendants filed a reply brief in further support of their motion. On January 8, 2020, with leave of the Court, Lead Plaintiff filed the operative pleading, the Second Amended Class Action Complaint (the "Complaint"). On January 22, 2020, Defendants filed a motion to dismiss the Complaint, which Lead Plaintiff opposed on February 5, 2020. On February 12, 2020, Defendants filed a reply brief in further support of their motion.

On April 14, 2020, the Court denied Defendants' motion to dismiss.

## II.    NEGOTIATION AND TERMS OF THE PROPOSED SETTLEMENT

On May 1, 2020, Lead Plaintiff and Defendants engaged in a full-day mediation session before retired District Court Judge Layn Phillips, Esq., a well-respected and highly experienced mediator. In advance of that session, the parties submitted detailed opening mediation statements to the Mediator, together with supporting exhibits. The parties were able to reach an agreement in principle to settle the claims against Defendants, resulting in a memorandum of understanding that the parties referred to as a "term sheet," entered into on May 3, 2020. The Parties subsequently negotiated the terms of the Stipulation of Settlement, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action, and related claims ("Released Claims"), in return for a cash payment by Defendants of $9,500,000 in cash (the "Settlement Amount") for the benefit of the Settlement Class.

## <u>ARGUMENT</u>

## I.    STANDARDS FOR PRELIMINARY APPROVAL OF THE SETTLEMENT

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re*

*HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)).[2] "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001). "In making this determination, this Court should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Id.*

Federal Rule of Civil Procedure 23(e) requires court approval for any class action settlement. This motion for preliminary approval of the Settlement is the first step to final approval, whereby the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Rule 23(e)(1)(A). Giving notice of the settlement to the class is justified by providing information "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(1)(B). To avoid serving notice of an obviously deficient settlement, courts engage in a two-step approach, ruling on a preliminary approval motion prior to determine whether to disseminate notice and hold a final approval hearing. *See Sunbeam*, 176 F. Supp. 2d at 1328 (noting preliminary approval granted, and engaging in more detailed analysis at final approval stage); *Bennett* v. *Behring Corp.*, 737 F.2d 982, 985-86 (11th Cir. 1984) (noting two-step process for approving class action settlement). The preliminary approval motion requires the Court to determine whether: (1) the settlement has any obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted. *In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason."); *Fresco* v. *Auto Data*

---

[2]     In the interest of brevity, unless otherwise noted, all internal quotations, brackets, and citations are omitted from citations to case law.

*Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, there is probable cause to notify the class of the proposed settlement"). After preliminary approval, the class is notified of the settlement and the final fairness hearing. *Checking*, 275 F.R.D. at 662.[3]

Rule 23(e)(2) lists criteria for evaluating the adequacy of a settlement, requiring a review of the likelihood that: (a) Lead Plaintiff and Lead Counsel adequately represented the class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate, taking into account: (i) the costs, risks and delays of trial and appeal; (ii) effectiveness of any proposed method of distributing relief to the class; (iii) terms of any proposed award of attorneys' fees; and (iv) any agreement required to be identified under Rule 23(e)(3);[4] and (d) the proposal treats class members equitably relative to each other.

As discussed below, the proposed Settlement readily satisfies the Rule 23(e)(2) factors and the Settlement Class is appropriate for certification such that the Settlement should be preliminary approved, and the Settlement Class should receive the Notice of the Settlement.

---

[3]     In the second step, the court will determine whether to grant final approval of the settlement. The factors to consider at that stage are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and, (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *Canupp* v. *Liberty Behavioral Health Corp.*, 417 Fed. App'x 843, 845 (11th Cir. 2011).

[4]     Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement in connection with a proposed settlement. Here, on May 3, 2020, the Parties entered into a term sheet, and, as of June 25, 2020, they entered into the Stipulation of Settlement and a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Dycom has the discretion to terminate the Settlement if requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities settlements, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and memorandum of understanding are the only agreements concerning the Settlement entered into by the Parties.

## II.   NOTICE IS WARRANTED AS THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE PURSUANT TO RULE 23(e)(2)

### A.   Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

The Boston Retirement System was appointed Lead Plaintiff after a finding that they were the "most adequate plaintiff" to represent the proposed Settlement Class. *See* Dkt. 29. Lead Plaintiff is a sophisticated institutional investor with substantial experience leading numerous securities class actions. Throughout the Action, Lead Plaintiff also benefited from the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Levi & Korsinsky LLP and Thornton Law Firm LLP are experienced and skilled firms in the securities litigation field, and each has a long and successful track record in such cases. *See* Buell Declaration Exhibits 2-3 (firm resumes). Both firms have experience serving as counsel in a number of high profile and influential cases. *Id.*

Lead Counsel vigorously litigated the Action since its inception. Lead Counsel, among other things: (i) conducted a thorough investigation that included the review of publicly available information regarding the Company and interviews of former employees and third parties; (ii) prepared two amended complaints; (iii) opposed two motions to dismiss; (iv) analyzed Defendants' mediation statement and exhibits; (v) analyzed documents produced by Defendants in connection with the mediation; and (vi) consulted with experts concerning damages, valuation, and loss causation. Lead Counsel successfully defeated Defendants' motion to dismiss. Prior to, and over the course of the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a deep understanding of the merits of the claims.

The Settlement was reached only after mediated negotiations between counsel with extensive knowledge and expertise litigating securities fraud class actions. At the conclusion of this process Lead Counsel believe that this is a fair and reasonable settlement. *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest

of those affected by the settlement."); *Lake* v. *First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.").

**B.     The Settlement Was Negotiated at Arm's-Length**

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the product of arms-length negotiations. *Bennett*, 737 F.2d at 987, n.9 (affirming approval of settlement and noting district court's conclusion that "the settlement has been achieved in good faith through arms-length negotiations and is not the product of collusion between the parties and/or their attorneys"); *In re Portal Software, Inc. Sec. Litig*., 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The use of an experienced mediator is an important factor supporting a finding that this requirement is satisfied. Here, Lead Plaintiff and Lead Counsel agreed to settle after rigorous lengthy litigation and through a mediation process overseen by a highly regarded and experienced mediator, retired Judge Layn Phillips. *See, e.g.*, *Florida Educ. Ass'n* v. *Dept. of Education*, 2019 WL 8272779, at *3 (N.D. Fla. Nov. 4, 2019) (granting preliminary approval and noting that the settlement agreement was reached "during arm's length negotiations at mediation facilitated by … a highly skilled and experienced mediator") (collecting cases).

**C.     The Relief Provided by the Settlement Is Adequate**

**1.     This Settlement Is Well Within the Range of Reasonableness**

The $9.5 million Settlement Amount presents a favorable recovery when compared to the median settlement value in securities class action settlements in 2019, which was reported by Cornerstone Research to be $11.5 million. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2019 Review and Analysis at 1 (Cornerstone Research 2020), attached as Exhibit 4 to the Buell Declaration. The Settlement Amount is nearly three times the size of the median settlement for cases that are less than two years old ($3.3 million), and higher than the median amount for cases between two and three years old ($7.9 million). *Id.* The Settlement

Amount is also significantly higher than the median settlement dollars for cases where the court has ruled on the motion to dismiss (which is $5.4 million).

Moreover, the Settlement provides a favorable recovery as a proportion of estimated class wide damages. Lead Plaintiff's damages expert estimated that if liability were established with respect to all of the claims, including for the two alleged corrective disclosures, the most reasonable estimate of aggregate damages recoverable at trial was $165.8 million, taking into account the exclusion of pre-Class Period gains.  Accordingly, the Settlement recovers approximately 5.7% of aggregate damages likely recoverable at trial. Had the case proceeded, Defendants likely would have argued for disaggregation of potentially confounding factors on both of the alleged corrective disclosures.  Defendants also would have argued that Dycom's stock price reacted to timely disclosed financial results unrelated to the alleged fraud – financial results that, when disaggregated, significantly reduce the amount of alleged damages.  If these arguments prevailed at class certification, summary judgment, or trial, the Settlement Class could have recovered significantly less or, indeed, nothing. Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts have approved settlements that recovered a similar, or smaller, percentage of maximum damages. *See, e.g.*, *Thorpe* v. *Walter Investment Management Corp.*, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) (approving settlement of 5.5% of maximum possible recovery).

The Settlement is also reasonable because it provides the Settlement Class, whose claims have been pending since 2018, with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion. Though Lead Plaintiff believes it could have succeeded in establishing each of the elements of the alleged claims, Defendants would likely have sought summary judgment and there was no guarantee that the proposed class would prevail against Defendants' continuous challenges and, even if they did, how the Court's rulings would affect damages or how the case would be presented to the jury. Regarding falsity, Defendants would have argued that a number of the statements alleged to be false and misleading

were non-actionable forward-looking statements protected by the Safe Harbor of the PSLRA, that a number of statements were not false in any respect, that certain statements were inactionable corporate puffery, and that other statements constituted "opinion" statements that could not be shown to be false or misleading. With respect to scienter, Defendants would argue that Lead Plaintiff would not be able to prove that any Defendant knowingly made statements with the required intent to defraud or with severe recklessness, especially because they believed they adequately informed the market that the various projections they provided came with obvious and disclosed limitations. Furthermore, Defendants would have argued that the problems the Company faced were issues of timing of revenue recognition and that the quarter following the close of the Class Period, the Company exceeded analyst estimates, arguably providing an opposing inferences of scienter on the part of Defendants.

These risks aside, additional discovery would have been protracted and the trial of Lead Plaintiff's claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. *See, e.g.*, *Florida Ed. Ass'n*, 2019 WL 8272779, at *3 (at final approval, noting that "the litigation is complex, has been protracted, already having consumed almost two years, and if not settled likely will go on for considerable additional time (including appeals) at substantial additional expense").

### 2.     The Effective Process for Distributing Relief

The Settlement will be effectuated with the assistance of an experienced claims administrator, A.B. Data Ltd. The Claims Administrator will employ a well-established protocol for the processing of claims in a securities class action. Potential class members will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Court-approved Plan of Allocation. *See* Stipulation ¶1.24. Lead Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given

the chance to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination.

After the Settlement reaches its Effective Date (*see* Stipulation ¶1.7) and the passing of all applicable deadlines, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to the American Red Cross, a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiff and approved by the Court. *See* Stipulation ¶3.24.

### 3. The Anticipated Attorneys' Fees and Expenses Are Reasonable

As set forth in the Notice, Lead Counsel intends to request attorneys' fees of no more than 29% of the Settlement Fund and litigation expenses of no more than $350,000, which may include an application for reimbursement by the Lead Plaintiff pursuant to the PSLRA. From 2009 through 2013, the average fee in the Eleventh Circuit was 30% and the median fee was 33%. Eisenberg, Miller & Germano, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. L. REV. 937, 947, 951 (2017); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 836 (2010) (finding, in the Eleventh Circuit for 2006– 2007 period of the study, the average fee was 28.1% and the median fee was 30%). Courts routinely approve awards of attorneys' fees that are higher. *See, e.g.*, *Dukes* v. *Air Canada*, 2020 WL 496144, at *1 (M.D. Fla. Jan. 30, 2020) (approving attorneys' fees and costs representing 33.3%

of settlement fund); *Hanley* v. *Tampa Bay Sports & Entm't LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding fee larger than 1/3 of the common settlement fund and noting that "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund") (collecting cases).

The basis of Lead Counsel's fee and expense request will be detailed in their upcoming motion requesting fees and expenses.

### D. Settlement Class Members Are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D). Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution pursuant to the Plan, and Lead Plaintiff will be subject to the same formula for distribution of the Settlement as other class members. *See Borcea* v. *Carnival Corp.*, 238 F.R.D. 664, 673-73 (S.D Fla. 2006) (approving as fair and reasonable settlement formula with *pro rata* distribution to class members).

## III. PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

As part of the Settlement, Lead Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class (as defined in ¶1.34 of the Stipulation).

### A. The Settlement Class Meets the Requirements of Rule 23(a)

#### 1. Rule 23(a): Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In securities litigation, courts regularly find the numerosity requirement satisfied with respect to purchasers of nationally traded securities. *See In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp.2d 1315, 1325 (N.D. Ga. 2007). Here, throughout the Class Period, Dycom common stock traded actively on the New York Stock Exchange ("NYSE") under the ticker symbol "DY." As of May 21, 2018, there were 31,194,881 shares of common stock outstanding. *See* Complaint ¶372. These shares were purchased by thousands of investors, making joinder

impracticable. *See Cox.* v. *Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate….").

### 2.      Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). A "common" issue is one that may be proved through the presentation of generalized proof applicable to the class as a whole. *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009) (citing *Murray* v. *Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). "The Eleventh Circuit has described this provision as requiring only that the claims actually litigated in the suit ... simply be those fairly represented by the named plaintiffs, noting that Rule 23 does not require that *all* the questions of law and fact raised by the dispute be common." *Id.* In this case, the central questions of whether Defendants' statements regarding Dycom's customer contracts and permitting processes were false and misleading, and whether Defendants acted with the requisite mental state, are the same for all class members.

### 3.      Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3) requires Lead Plaintiff's claims to be "typical" of the class's claims. The typicality requirement seeks to ensure that a representative plaintiff possesses the same interest and has suffered the same injury shared by all members of the class he represents. *Netbank*, 259 F.R.D. at 665. Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist. *Id.*  A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class. *Id.*

Here, Lead Plaintiff's claims are typical of those of the Settlement Class. Like other class members, Lead Plaintiff purchased Dycom common stock during the Class Period, and claims to have suffered damages.

#### 4.      Rule 23(a)(4):  Lead Plaintiff Is An Adequate Representatives

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "The adequacy of representation prerequisite of Rule 23 requires that the class representatives have common interests with the non-representative class members and requires that the representatives demonstrate that they will vigorously prosecute the interests of the class through qualified counsel." *Scientific-Atlanta*, 571 F. Supp. 2d at 1331. Here, as mentioned above, Lead Plaintiff is a sophisticated institutional investor that has and will continue to represent the interests of the Settlement Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class. Lead Counsel also have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Lead Counsel are well qualified and able to conduct the Action, and have ably and effectively represented Lead Plaintiff and the proposed Settlement Class throughout the Action.[5]

#### B.      The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 623 (1997); *Scientific-Atlanta*, 571 F. Supp. 2d at 1336 (citing same). The predominance requirement is "readily met" in securities class actions. *Id* at 625. Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the SEC).

Moreover, class-wide reliance is established in this Action through the application of *Affiliated Ute Citizens of Utah* v. *United States*, 406 U.S. 128 (1972), because the claims asserted

---

[5]      Accordingly, Lead Counsel satisfy the Class Counsel requirements of Rule 23(g) and have already been approved by the Court to represent the class pursuant to 15 U.S.C.§ 78u-4(a)(3)(B)(v). *See* Dkt. No. 29.

against Defendants are predicated upon omissions of material fact which there was a duty to disclose, or alternatively the "fraud-on-the-market" presumption of reliance in *Basic Inc.* v. *Levinson*, 485 U.S. 224, 241-42 (1988). Application of *Affiliated Ute* or *Basic* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements or omissions. *See id*. Here, where Dycom's common stock is traded on the NYSE, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. *See* Complaint ¶372.

Further, resolution of this case through a class action is far superior to litigating (and settling) thousands of individual cases where the expense for a single investor would likely exceed its losses. *See Scientific-Atlanta*, 571 F. Supp. 2d at 1344 (in securities class action, determining that certifying a class "superior to any other method of adjudication").

## IV.     NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA REQUIREMENTS

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). Due process does not require that class members actually receive notice; instead, notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Lee* v. *Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *4 (S.D. Fla. Sept. 14, 2015).

Lead Counsel proposes to provide Settlement Class Members notice by: (i) individual first-class mailing of the long-form Notice, addressed to all Class Members who can reasonably be identified and located, using information provided by Dycom's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *Investor's Business Daily*; and (iii) dissemination of the Summary Notice on the internet using *AccessWire*. *See Ocwen*, 2015 WL 5449813, at *4 (finding similar procedures for notice constitute the best notice practicable). The Notice will also be accessible on the Settlement website and Lead Counsel's websites. This

proposed notice program is the "gold standard" in securities cases because of the availability of name and address data for potential class members from third-party banks, brokers, and nominees.

In addition to the proposed methods of providing notice, the form and substance of the notice program are also sufficient. The proposed forms of notice describe the terms of the Settlement; the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for requesting exclusion from the Settlement Class, objecting, and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.

The long-form Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable by Lead Plaintiff; (iii) that Lead Counsel intend to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis); (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Lead Plaintiff also requests that the Court appoint A.B. Data as the Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms, and to administer the Settlement. *See* Exhibit 5 to Buell Declaration (A.B. Data resume).

In connection with preliminary approval of the Settlement, the Court must set a Settlement Hearing date, dates for mailing the Notice and publication of the Summary Notice, and deadlines for requesting exclusion from the Settlement Class, objecting, filing motions in support of final approval and attorneys' fees and expenses, and submission of Claim Forms. Lead Plaintiff proposes the following proposed deadlines:

| Deadline for mailing individual Notices and Claim Forms (the "Notice Date"). | Ten (10) business days after entry of the Preliminary Approval Order. |
|---|---|
| Deadline for publication of Summary Notice | Within 14 calendar days of the Notice Date. |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses. | No later than 35 calendar days before the Settlement Hearing. |
| Deadline for receipt of requests for exclusion from the Settlement Class; or objections to the Settlement, Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and expenses. | No later than 21 calendar days before the Settlement Hearing. |
| Deadline for filing reply papers in support of the Settlement, the Plan of Allocation, or Lead Counsel's request for fees and expenses. | No later than seven (7) calendar days before the Settlement Hearing. |
| Deadline for submission of Claim Forms. | Postmarked or received no later than five (5) calendar days before the Settlement Hearing. |
| Settlement Hearing. | At the Court's convenience, but no fewer than ninety (90) calendar days after the date of the entry of the Preliminary Approval Order. |

The Settlement Hearing date is the only date that the Court must schedule.

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement; (ii) holding that the manner and forms of notice satisfy due process and provide the best notice practicable under the circumstances, and ordering that notice be provided to the Settlement Class; (iii) setting a date for the final approval hearing; (iv) appointing A.B. Data as Claims Administrator; (v) preliminarily certifying the Settlement Class; and (vi) granting such other and further relief as may be required.

DATED: June 26, 2020    Respectfully Submitted,

/s/ *Cullin O'Brien*
Cullin O'Brien
Florida Bar No. 0597341
CULLIN O'BRIEN LAW, P.A.
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Tel: (561) 676-6370
Fax: (561) 320-0285
Email: cullin@cullinobrienlaw.com

*Liaison Counsel*

Guillaume Buell (admitted *pro hac vice*)
THORNTON LAW FIRM LLP
1 Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 720-1333
Fax: (617) 720-2445
Email: gbuell@tenlaw.com

Shannon L. Hopkins (admitted *pro hac vice*)
Stephanie Bartone (admitted *pro hac vice*)
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (212) 992-4523
Fax: (866) 367-6510
Email: shopkins@zlk.com
Email: sbartone@zlk.com

*Lead Counsel and Proposed Class Counsel*

LABATON SUCHAROW LLP
Jonathan Gardner (admitted *pro hac vice*)
Christine M. Fox (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Tel: 212-907-0700
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel for Lead Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 26, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Cullin O'Brien*
Cullin O'Brien

**SERVICE LIST**

Shannon L. Hopkins
Stephanie Bartone
LEVI & KORSINSKY, LLP
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: stornatore@zlk.com

Guillaume Buell
THORNTON LAW FIRM LLP
1 Lincoln Street, 25th Floor
Boston, MA 02111
Tel: (617) 720-1333
Fax: (617) 720-2445
Email: gbuell@tenlaw.com

Cullin Avram O'Brien
CULLIN O'BRIEN LAW, P.A.
6541 Ne 21st Way
Ft. Lauderdale , FL  33308
Tel.: (561) 676-6370
Fax: (561) 320-0285
Email: cullin@cullinobrienlaw.com

Alan S. Goudiss
Brian H. Polovoy
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 848-4000
Fax: (212) 848-7179
Email: agoudiss@shearman.com
Email: bpolovoy@shearman.com

Scott G. Hawkins
Joanne M. O'Connor
JONES FOSTER JOHNSTON
   & STUBBS, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel: (561) 659-3000
Fax: (561) 650-5300
Email: shawkins@jonesfoster.com
Email: joconnor@jonesfoster.com
Jonathan Gardner
Christine M. Fox
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Tel: 212-907-0700
Fax: 212-818-0477
jgardner@labaton.com
cfox@labaton.com