# BUELL DECLARATION EXHIBIT 1

# (STIPULATION OF SETTLEMENT)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 9:18-cv-81448-SINGHAL**

JENNIFER TUNG, Individually and on Behalf
of All Others Similarly Situated,

      Plaintiff,

v.

DYCOM INDUSTRIES, INC., STEVEN E.
NIELSEN and ANDREW DEFERRARI,

      Defendants.

_____/

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement (the "Stipulation") is made and entered into by and between Lead Plaintiff Boston Retirement System ("Lead Plaintiff"), on behalf of itself and all other members of the Settlement Class (defined below), on the one hand, and Dycom Industries, Inc. ("Dycom," or "the Company"), Steven E. Nielsen ("Nielsen"), and Andrew DeFerrari ("DeFerrari") (collectively, the "Defendants"; together with Lead Plaintiff, the "Parties"), on the other.

**WHEREAS**:

A.     All words or terms used herein that are capitalized, whether or not immediately defined, shall have the meanings ascribed to those words or terms herein and in Part 1 hereof entitled "Definitions."

B.     On October 25, 2018, the above-captioned securities class action (the "*Tung* Action") was filed in the United States District Court for the Southern District of Florida on behalf of all investors who purchased or otherwise acquired Dycom common stock between November 20, 2017, and August 10, 2018, inclusive.  On October 30, 2018, a similar action captioned *Possick* v. *Dycom Industries, Inc., et al.*, No. 9:18-cv-81481 (the "*Possick* Action") was also filed in this Court seeking the same relief.

Page 1 of 32

C.      On January 11, 2019, the Court issued an Order consolidating the *Possick* Action with the *Tung* Action (hereinafter referred to, with the *Possick* Action, as the "Action") and ordered all future filings to be in the Action.

D.      On January 11, 2019, the Court issued an Order: (i) appointing the Boston Retirement System as Lead Plaintiff for the proposed class; and (ii) appointing Thornton Law Firm LLP and Levi & Korsinsky LLP as Lead Counsel, and Cullin O'Brien Law, P.A. as Liaison Counsel.

E.      On March 13, 2019, Lead Plaintiff filed an Amended Class Action Complaint, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and United States Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, against Defendants, on behalf of itself and all other persons similarly situated who purchased or otherwise acquired Dycom common stock between November 20, 2017 and August 10, 2018, inclusive.

F.      Defendants filed a motion to dismiss the amended complaint on April 19, 2019, which Lead Plaintiff opposed on May 20, 2019.  On June 3, 2019, Defendants filed a reply brief in further support of their motion.  On January 8, 2020, with leave of the Court, Lead Plaintiff filed the operative pleading, the Second Amended Class Action Complaint (the "Complaint"). On January 22, 2020, Defendants filed a motion to dismiss the Complaint, which Lead Plaintiff opposed on February 5, 2020.  On February 12, 2020, Defendants filed a reply brief in further support of their motion.  On April 14, 2020, the Court denied Defendants' motion to dismiss the Complaint.

G.      On May 1, 2020, Lead Plaintiff and Defendants engaged in a full-day mediation session before retired United States District Judge Layn R. Phillips, a well-respected and highly experienced mediator.  In advance of that session, the Parties exchanged detailed mediation statements along with supporting exhibits.  By the end of the mediation session, the Parties were able to reach an agreement in principle to settle the claims against Defendants.  The terms of the

agreement in principle were set forth in a term sheet executed by Lead Plaintiff and Defendants on May 3, 2020.

H.      In connection with this Action, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action.  This process included reviewing and analyzing: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company and its subsidiaries, including information concerning Dycom's customers and contracts; (v) interviews conducted with former employees of Dycom and its subsidiaries; (vi) documents produced by Defendants in connection with due diligence discovery conducted after the Mediation; and (vii) the applicable law governing the claims and potential defenses.  Lead Counsel interviewed 129 former employees of Dycom and its subsidiaries with relevant knowledge.  Lead Counsel also consulted with experts on damages and loss causation issues.

I.      Defendants have denied and continue to deny any wrongdoing or that they committed any act or omission giving rise to any liability or violation of any rule, regulation, or law, including the U.S. securities laws.  Defendants have denied and continue to deny each and every one of the claims alleged by Lead Plaintiff in the Action on behalf of the proposed class, including all claims in the Complaint.  Defendants also have denied, and continue to deny, *inter alia*, the allegations that Lead Plaintiff or any member of the proposed class suffered damage or were otherwise harmed by the conduct alleged in the Action.  Defendants have asserted, and continue to assert, that, at all times, they acted in good faith and in a manner they reasonably believed to be in accordance with all applicable rules, regulations, and laws.  Nonetheless, Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in the Stipulation to avoid the further expense, inconvenience, and burden of this Action, the distraction and diversion of personnel and

resources, and to obtain the conclusive and complete dismissal or release of this Action and the Released Claims.

J.      The Stipulation, whether or not consummated, and any proceedings relating to any settlement of the Action, or any of the terms of any such settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Defendants, or any of them, with respect to any fact or matter alleged in the Action, or any claim of fault or liability or wrongdoing or damage whatsoever, or any infirmity in any claim or defense that has been or could have been asserted.  Each Defendant reserves all defenses to any claims that may be filed by anyone, including any individual or entity that has sought, or seeks, exclusion from the Settlement Class.

K.      Lead Plaintiff believes that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted.  However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals.  They also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation.  Lead Counsel also are mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action.  Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial monetary benefits upon the Settlement Class (as defined below) and is in the best interests of Lead Plaintiff and the Settlement Class (as defined below).

**NOW THEREFORE**, without any concession by Lead Plaintiff that the Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit of their defenses, it is hereby **STIPULATED AND AGREED**, by and among the Parties, through their respective attorneys, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23(e), that, in consideration of the benefits flowing to the Parties hereto, all Released Claims and all Released Defendants' Claims, as against all Released Parties, shall be fully, finally,

and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs, upon and subject to the following terms and conditions:

1.   **DEFINITIONS**

As used in the Stipulation, the following terms, when capitalized, shall have the meanings set forth below.  In the event of any inconsistency between any definition set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

1.1   "Action" means the consolidated civil actions captioned *Tung* v. *Dycom Industries, Inc., et al.,* Case No. 9:18-cv-81448-AHS, and *Possick* v. *Dycom Industries, Inc., et al.*, No. 9:18-cv-81481-AHS, pending in the United States District Court for the Southern District of Florida before the Honorable Raag Singhal.

1.2    "Authorized Claimant" means a Settlement Class Member who submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment.

1.3   "Claims Administrator" means A.B. Data, Ltd., the firm to be retained by Lead Counsel, subject to Court approval, to provide all notices approved by the Court to Settlement Class Members, to process proofs of claim, and to administer the Settlement.

1.4   "Class Period" means the period from November 20, 2017 through August 10, 2018, inclusive.

1.5   "Defendants" means Dycom Industries, Inc., Steven Nielsen, and Andrew DeFerrari.

1.6   "Defendants' Counsel" means the law firms of Shearman & Sterling LLP and Jones Foster P.A.

1.7   "Effective Date" means the first date by which all of the events and conditions specified in paragraph 5.1 of the Stipulation have been met and have occurred.

1.8   "Escrow Account" means the separate escrow account maintained at Esquire Bank, N.A., wherein the Settlement Amount shall be deposited and held for the benefit of the Settlement Class pursuant to the Stipulation and subject to the jurisdiction of the Court.

1.9     "Escrow Agent" means Lead Counsel.

1.10    "Fee and Expense Application" means Lead Counsel's application, on behalf of all Plaintiff's Counsel, for an award of attorneys' fees and payment of litigation expenses incurred in prosecuting the Action, including any expenses of Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

1.11    "Final" means, with respect to the Judgment, when the following has occurred: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) and the time in which to appeal the Judgment has passed without any such motion having been filed and any such appeal having been taken; or (ii) a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) is filed or an appeal is taken, and that motion or appeal has been ruled upon in such a manner as to permit the consummation of the Settlement, in accordance with the terms and conditions of the Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal which concerns only the issue of attorneys' fees and expenses or any Plan of Allocation of the Settlement Fund.  Any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation of the Net Settlement Fund, or to the Court's award of attorneys' fees or expenses, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

1.12    "Individual Defendants" means Steven Nielsen and Andrew DeFerrari.

1.13    "Judgment" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, in the form attached hereto as Exhibit B.

1.14    "Lead Counsel" means Thornton Law Firm LLP and Levi & Korsinsky LLP.

1.15    "Lead Plaintiff" means the Boston Retirement System.

1.16    "Liaison Counsel" means Cullin O'Brien Law, P.C.

1.17    "Mediator" means the Honorable Layn R. Phillips, Ret.

1.18   "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.

1.19   "Notice" means the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses for mailing to Settlement Class Members, to be approved by the Court substantially in the form attached hereto as Exhibit 1 to Exhibit A hereto.

1.20   "Notice and Administration Expenses" means (i) all costs, fees, and expenses incurred in connection with providing notice to the Settlement Class and the administration of the Settlement, including but not limited to (a) providing notice of the proposed Settlement by mail, publication, and other means to Settlement Class Members; (b) receiving and reviewing claims; (c) applying the Plan of Allocation; (d) communicating with Persons regarding the proposed Settlement and claims administration process; and (e) distributing the proceeds of the Settlement; and (ii) all fees related to the Escrow Account and investment of the Settlement Fund.

1.21   "Parties" means Lead Plaintiff and Defendants.

1.22   "Person(s)" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

1.23   "Plaintiff's Counsel" means Lead Counsel, Liaison Counsel, and Labaton Sucharow LLP.

1.24   "Plan of Allocation" means the proposed plan or formula of allocation of the Net Settlement Fund set forth in the Notice attached hereto as Exhibit 1 to Exhibit A hereto, whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, expenses, and interest and other expenses as may be awarded by the Court.

1.25    "Preliminary Approval Order" means the Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, to be entered by the Court in the form attached hereto as Exhibit A.

1.26    "Proof of Claim" or "Claim Form" means the Proof of Claim and Release form to be approved by the Court substantially in the form attached hereto as Exhibit 2 to Exhibit A hereto.

1.27    "Released Claims" means any and all claims and causes of action of every nature and description, including both known claims and Unknown Claims, contingent or absolute, mature or not mature, liquidated or not liquidated, accrued or not accrued, concealed or hidden, regardless of legal or equitable theory and whether arising under federal, state, common or foreign law, that Lead Plaintiff or any other Settlement Class Member: (i) asserted in the Action; or (ii) could have asserted in the Action or any forum, domestic or foreign, that both (a) arise out of or relate to the facts and circumstances alleged in the Action; and (b) the purchase or acquisition of Dycom's publicly traded common stock during the Class Period.  Released Claims do not include: (i) claims relating to the enforcement of the Settlement; (ii) any claims asserted in the action captioned *Crenshaw* v. *Coley, et al*., No. 18-cv-25289 (S.D. Fla.); and (iii) any claims of Persons who submit a valid and timely request for exclusion in accordance with the Stipulation that is accepted by the Court.

1.28    "Released Defendant Parties" means Defendants, Defendants' Counsel, and each of their respective past or present direct or indirect subsidiaries, parents, affiliates, principals, successors and predecessors, assigns, officers, directors, shareholders, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, and insurers; the spouses, members of the immediate families, representatives, and heirs of the Individual Defendants, as well as any trust of which any Individual Defendant is the settlor or which is for the benefit of any of their immediate family members; any firm, trust, corporation, or entity in which any Defendant has a controlling interest; and any of the legal representatives, heirs, successors in interest, or assigns of Defendants.

1.29    "Released Defendants' Claims" means all claims and causes of action of every nature and description, including both known claims and Unknown Claims, whether arising under

federal, state, common, or foreign law, that Defendants could have asserted against any of the Released Plaintiff Parties that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Action, except for claims relating to the enforcement of the Settlement or any claims against any Person who submits a timely and valid request for exclusion in accordance with the Stipulation that is accepted by the Court.

1.30    "Released Parties" means the Released Defendant Parties and the Released Plaintiff Parties.

1.31    "Released Plaintiff Parties" means each and every Settlement Class Member, Lead Plaintiff, Plaintiff's Counsel, and each of their respective past or present trustees, officers, directors, partners, employees, affiliates, contractors, principals, agents, attorneys, predecessors, successors, assigns, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Released Plaintiff Party who is an individual, as well as any trust of which any Released Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members.  "Released Plaintiff Parties" does not include any Person who submits a timely and valid request for exclusion in accordance with the Stipulation that is accepted by the Court.

1.32    "Settlement" means the resolution of the Action in accordance with the terms and provisions of the Stipulation.

1.33    "Settlement Amount" means the total principal amount of nine million and five hundred thousand U.S. dollars ($9,500,000.00) in cash.

1.34    "Settlement Class" or "Settlement Class Members" means all persons and entities that purchased or otherwise acquired Dycom common stock during the period from November 20, 2017 through August 10, 2018, inclusive, and who were damaged thereby.  Excluded from the definition of "Settlement Class" and "Settlement Class Members" are: (i) Defendants; (ii) members of the immediate families of the Individual Defendants; (iii) Dycom's subsidiaries and affiliates; (iv) any Person who is or was an officer or director of Dycom or any of Dycom's subsidiaries or affiliates during the Class Period; (v) any entity in which any Defendant has a

controlling interest; and (vi) any Person who submits a timely and valid request for exclusion in accordance with the Stipulation that is accepted by the Court. Also excluded from the definition of "Settlement Class" and "Settlement Class Members" are the legal representatives, heirs, successors, and assigns of any Person identified in subparagraphs (i) through (vi) above.

1.35 "Settlement Fund" means the Settlement Amount and any interest earned thereon.

1.36 "Settlement Hearing" means the hearing to be held by the Court to determine whether the Settlement is fair, reasonable, and adequate and should be approved.

1.37 "Stipulation" means this Stipulation and Agreement of Settlement.

1.38 "Summary Notice" means the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses for publication, to be approved by the Court substantially in the form attached hereto as Exhibit 3 to Exhibit A hereto.

1.39 "Taxes" means all taxes of any kind (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund as described in paragraph 3.6 of the Stipulation.

1.40 "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of the Taxes, including, without limitation, expenses of tax attorneys or accountants and mailing and distribution costs relating to the preparation of tax returns and related documents described in paragraph 3.6 of the Stipulation, and the filing of (or the failure to file) such returns.

1.41 "Unknown Claims" means any and all Released Claims that Lead Plaintiff or any other Settlement Class Member do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class. With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that,

upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Defendants' Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.   Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

## 2.   THE SETTLEMENT AMOUNT, ESCROW ACCOUNT, AND RELEASES

2.1   Defendants shall cause the Settlement Amount to be transferred to the Escrow Account no later than ten (10) business days after the later of: (i) the entry of the Preliminary Approval Order; and (ii) the provision by Lead Counsel to Defendants' Counsel of information necessary to effectuate the transfer of the Settlement Amount to the Escrow Account, including, without limitation, the beneficiary account name, the U.S. bank name, address, account number

and ABA bank code (*i.e.*, routing number) (the later of the foregoing (i) and (ii) being hereinafter referred to as the "Payment Date").

2.2     If the entire Settlement Amount is not deposited into the Escrow Account by the Payment Date, Lead Plaintiff may terminate the Settlement but only if: (i) Defendants have received from Lead Counsel written notice of Lead Plaintiff's intention to terminate the Settlement; and (ii) the entire Settlement Amount is not transferred to the Escrow Account within fourteen (14) business days after Lead Counsel has provided such written notice.

2.3     Other than the obligation of Defendants to cause the payment of the Settlement Amount pursuant to paragraph 2.1 above, Defendants shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member pursuant to the Stipulation.

2.4     With the sole exception of Defendants' obligation to cause payment of the Settlement Amount into the Escrow Account as provided for in paragraph 2.1 above, Defendants' obligation pursuant to paragraph 3.7 of the Stipulation, and Dycom's obligation pursuant to paragraph 3.15 of the Stipulation, Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, Tax Expenses, or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

2.5     The Settlement is not a claims-made settlement.   As of the Effective Date, Defendants, or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason, except as otherwise provided in this Stipulation.

2.6     Upon the Effective Date, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, waived, and dismissed any and all Released Claims against any and all Released Defendant Parties.

2.7     Upon the Effective Date, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any and all Released Defendant Parties with respect to any and all Released Claims.

2.8     Upon the Effective Date, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be permanently barred and enjoined from the institution, maintenance, prosecution, or enforcement, in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims against any and all Released Defendant Parties.

2.9     The failure of a Settlement Class Member to submit a Proof of Claim shall have no effect on the provisions of the foregoing paragraphs 2.6 through 2.8, inclusive.

2.10     Upon the Effective Date, Defendants, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, waived, and dismissed any and all Released Defendants' Claims against any and all of the Released Plaintiff Parties and shall be permanently barred and enjoined from the institution, maintenance, prosecution, or enforcement, in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all of the Released Defendants' Claims against any and all of the Released Plaintiff Parties..

### 3.     USE AND TAX TREATMENT OF SETTLEMENT FUND

3.1     The Settlement Fund shall be used: (i) to pay all Taxes and Tax Expenses; (ii) to pay Notice and Administration Expenses; (iii) to pay any attorneys' fees and expenses awarded by the Court; (iv) to pay any other fees and expenses awarded by the Court; and (v) to pay the claims of Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

3.2     The Escrow Agent shall not disburse the Settlement Fund except: (i) as provided in the Stipulation; (ii) by an order of the Court; or (iii) with the written agreement of counsel for the Parties.

3.3     Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to, the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

3.4     Except as otherwise provided in this Stipulation, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.

3.5     All funds held in the Escrow Account, and all earnings thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed or returned, pursuant to the terms of the Stipulation, or further order of the Court.  The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") in amounts that are up to the limit of FDIC insurance.  All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

### (a)     Taxes and Tax Expenses

3.6     After the Settlement Amount has been paid into the Escrow Account, the Parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  All provisions of the Stipulation shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  In addition, the Escrow Agent shall timely make, or cause to be

made, such elections as necessary or advisable to carry out the provisions of this paragraph 3.6, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur.

3.6.1   For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Escrow Agent or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)).  Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph 3.6.2.

3.6.2   Taxes and Tax Expenses with respect to the Settlement Amount and the Escrow Account shall be treated as, and considered to be, costs of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court or approval by Defendants.  The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)).  The Parties agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary, to carry out the provisions of this paragraph 3.6.

3.6.3   Defendants and Defendants' Counsel shall have no liability or responsibility for any Taxes or Tax Expenses with respect to the Settlement Fund and the Escrow Account, nor for the filing of any Tax Returns or other documents with the Internal Revenue Service or any other taxing authority.  In the event any Taxes are owed by any of the Defendants on any earnings on the funds on deposit in the Escrow Account, such amounts shall also be paid out of the Settlement Fund.

### (b)   Notice and Administration Expenses

3.7   Prior to the Effective Date, without further approval from Defendants or further order of the Court, Lead Counsel may expend up to $350,000 from the Settlement Fund to pay Notice and Administration Expenses actually incurred.  Additional sums for this purpose prior to the Effective Date may be paid from the Settlement Fund only upon agreement of the Parties or order of the Court.  Taxes, Tax Expenses, and fees related to the Escrow Account and investment of the Settlement Fund may be paid as incurred, without further approval of Defendants or further order of the Court.  After the Effective Date, without approval of Defendants or further order of the Court, Notice and Administration Expenses may be paid as incurred.  Defendants shall be responsible for providing any required notice under the Class Action Fairness Act of 2005, if any, at their own expense.

### (c)   Attorneys' Fees and Expenses

3.8   Lead Counsel, on behalf of Plaintiff's Counsel, will apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of litigation expenses incurred in prosecuting the Action, including reimbursement to Lead Plaintiff pursuant to the PSLRA, plus earnings on such amounts at the same rate and for the same periods as earned by the Settlement Fund.  Defendants shall take no position with respect to any Fee and Expense Application.

3.9   The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.  Any attorneys' fees and expenses awarded by the Court shall be paid from the Settlement Fund to Lead Counsel immediately after entry of the Order awarding such attorneys' fees and expenses and entry of the Judgment, notwithstanding the existence of any

timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Fee and Expense Application, the Settlement, or any part thereof.  Lead Counsel shall allocate any Court-awarded attorneys' fees and expenses among Plaintiff's Counsel.

3.10    In the event that the Judgment or the order awarding such fees and expenses paid to Lead Counsel pursuant to paragraphs 3.8 and 3.9 above is reversed or modified by final non-appealable Order, or if the Settlement is canceled or terminated for any reason, or shall not become effective for any reason, then Lead Counsel shall, in an amount consistent with any such modification, refund such fees or expenses to the Settlement Fund, plus the interest earned thereon, within fifteen (15) business days from receiving notice from Defendants' Counsel or from a court of competent jurisdiction.  Any and all refunds or repayments to the Settlement Fund required pursuant to this paragraph with regard to any fees or expenses received by or allocated to any of Plaintiff's Counsel pursuant to paragraph 3.9 above, shall be the joint and several obligation of each Lead Counsel, i.e., Thornton Law Firm LLP and Levi & Korsinsky LLP.  Each Lead Counsel, as a condition of receiving such fees or expenses on behalf of itself and each partner and/or shareholder of it, agrees that its law firm and its partners or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

3.11    With the sole exception of Defendants' obligation to pay the Settlement Amount into the Escrow Account as provided for in paragraph 2.1 of the Stipulation, Defendants shall have no responsibility for, and no liability whatsoever with respect to, any payment whatsoever to Plaintiff's Counsel in the Action that may occur at any time.

3.12    Defendants shall have no responsibility for, and no liability whatsoever with respect to, any allocation of any attorneys' fees or expenses among Plaintiff's Counsel in the Action, or to any other Person who may assert some claim thereto, or any fee or expense awards the Court may make in the Action.

3.13    Defendants shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses incurred by or on behalf of Settlement Class Members,

whether or not paid from the Escrow Account. The Settlement Fund will be the sole source of payment from Defendants for any award of attorneys' fees and expenses ordered by the Court.

3.14    The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, to be paid out of the Settlement Fund, are not part of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Action. Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the Court's or any appellate court's ruling with respect to fees and expenses in the Action.

### (d)    Administration of the Settlement, Including Distribution to Authorized Claimants

3.15    Dycom shall provide, or cause to be provided, to Lead Counsel or the Claims Administrator, at no cost to Lead Plaintiff or the Settlement Class, promptly after entry of the Preliminary Approval Order, transfer records in electronic searchable form, such as Excel, containing the names and addresses of Persons who purchased or acquired Dycom publicly traded common stock during the Class Period.

3.16    In accordance with the schedule set forth in the Preliminary Approval Order, Lead Counsel will cause the Notice and a Proof of Claim and Release to be mailed by the Claims Administrator to all shareholders of record, or nominees, who can be identified with reasonable effort. The Notice and Proof of Claim shall also be posted on the Claims Administrator's website. In accordance with the schedule set forth in the Preliminary Approval Order, the Summary Notice will also be published once in *Investor's Business Daily* and once over AccessWire. The cost of providing such notice shall be paid out of the Settlement Fund.

3.17    The Claims Administrator, subject to such supervision and direction of Lead Counsel or the Court as may be necessary or as circumstances may require, shall administer the

Settlement in accordance with the terms of this Stipulation, the Court-approved Plan of Allocation, and subject to the jurisdiction of the Court.

3.18     Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim within the time set by the Court (the "Claim Bar Date"), signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.

3.19     Except as otherwise ordered by the Court, all Settlement Class Members who fail to submit a Proof of Claim by the Claim Bar Date, or who submit a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment.

3.20     For purposes of determining the extent, if any, to which a claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(i) Each claimant shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(ii) A Claim Form shall be deemed to be submitted when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator;

(iii) Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, which shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed;

(iv) Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim Form in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (v) below; and

(v) If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

3.21    Each claimant who submits a Claim Form shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim. In connection with processing the Claim Forms, no discovery shall be allowed on the merits of the Action or the Settlement.

3.22    Payment pursuant to the Stipulation and Court-approved Plan of Allocation shall be deemed final and conclusive against any and all claimants. All Settlement Class Members whose claims are not approved shall be barred from participating in distributions from the Net

Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein and therein, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.

3.23    The Claims Administrator shall calculate the claims of Authorized Claimants in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. Following the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Claims Administrator shall distribute the Net Settlement Fund to Authorized Claimants.

3.24    Defendants shall not have a reversionary interest in the Net Settlement Fund.  If there is any unclaimed balance remaining in the Net Settlement Fund after a reasonable amount of time following the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, after payment of Notice and Administration Expenses, Taxes, Tax Expenses, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion.  These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and it is no longer feasible or economical to make further distributions, at which point, any balance that still remains in the Net Settlement Fund after payment of outstanding Notice and Administration Expenses, Taxes, Tax Expenses, and attorneys' fees and expenses, if any, shall be contributed to the American Red Cross, subject to approval by the Court.

3.25    Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to the processing, review, determination or calculation of any claims, the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.

3.26    Defendants shall take no position with respect to the Plan of Allocation or any other such plan as may be approved by the Court.

3.27    It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.  Settlement Class Members and Defendants shall be bound by the terms of the Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation.

3.28    No Person shall have any claim against Lead Plaintiff, Plaintiff's Counsel, Released Defendant Parties, or the Claims Administrator based on distributions made substantially in accordance with the Settlement, the Stipulation, and the Plan of Allocation, or otherwise as further ordered by the Court.

## 4.    PRELIMINARY APPROVAL ORDER AND SETTLEMENT HEARING

4.1    Promptly after execution of the Stipulation, Lead Counsel shall submit the Stipulation together with its exhibits to the Court and shall apply for the entry of the Preliminary Approval Order.

4.2    Lead Counsel shall request that, after notice is given to the Settlement Class, the Court hold the Settlement Hearing and approve the Settlement as set forth herein.  At or promptly after the Settlement Hearing, Lead Counsel also shall request that the Court approve the proposed Plan of Allocation and the Fee and Expense Allocation.

4.3    Lead Counsel and Defendants' Counsel shall jointly request, if the Settlement contemplated by the Stipulation is approved by the Court, that the Court enter the Judgment.

## 5.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

5.1    The Stipulation shall become effective only if and when:

(i)      the Parties execute the Stipulation and such other documents as may be required to obtain preliminary and final approval of the Settlement in a form satisfactory to the Parties;

(ii)     the Settlement Amount has been deposited into the Escrow Account;

(iii)    the Court enters the Preliminary Approval Order;

(iv)    the Court enters the Judgment; and

(v)     the Judgment becomes Final.

5.2      If any of the conditions specified in paragraph 5.1 above are not met, then Defendants and Lead Plaintiff shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice"), through counsel, to all other Parties hereto within fourteen (14) calendar days of such failure.

5.3      In addition to all of the other rights and remedies that Lead Plaintiff has under the terms of the Stipulation, Lead Plaintiff shall also have the right to terminate the Settlement in the event that the additional due diligence being conducted by Lead Plaintiff does not confirm the reasonableness of the Settlement, by providing written notice of the election to terminate to Defendants at least twenty-one (21) calendar days prior to the Settlement Hearing.

5.4      Concurrently with the execution of the Stipulation, Defendants' Counsel and Lead Counsel shall execute a Confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement").  In addition to all of the other rights and remedies that Dycom has under the terms of the Stipulation, Dycom shall also have, subject to certain conditions set forth in the Supplemental Agreement, the sole option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria (the "Opt-Out Threshold").  The Parties agree to maintain the confidentiality of the Supplemental Agreement, which shall not be filed with the Court unless a dispute arises as to its terms, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court.  If submission of the Supplemental Agreement is required for resolution of a dispute

or is otherwise ordered by the Court, the Parties will undertake to have the Opt-Out Threshold submitted to the Court in camera or under seal.

      5.5     In the event that the Stipulation shall terminate or be canceled, or shall not become effective for any reason, within fourteen (14) business days after written notification of such event is sent by Defendants' Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less expenses which have either been incurred or disbursed pursuant to paragraphs 3.6 (including subparagraphs 3.6.1, 3.6.2, and 3.6.3) or 3.7 of the Stipulation, shall be refunded, pursuant to written instructions from Defendants' Counsel, to the Party, Parties or insurers that paid the Settlement.  At the request of Defendants' Counsel, the Escrow Agent or its designee shall apply, within fourteen (14) business days of such request, for any tax refund owed on the Settlement Fund, and shall pay the proceeds of the refund, after deduction of any expenses incurred in connection with such application(s) for refund, at the written direction of Defendants' Counsel, to the Party, Parties or insurers that paid the Settlement within twenty-one (21) calendar days from receipt of the refund.

      5.6     In the event that the Stipulation shall terminate or be canceled, or shall not become effective for any reason, the Parties shall be restored to their respective positions in the Action as of May 1, 2020.  In such event, the terms and provisions of the Stipulation, with the exception of this paragraph and paragraphs 1.1 through 1.41, 3.6 (including subparagraphs 3.6.1, 3.6.2, and 3.6.3), 3.10, 5.5, 7.8, and 7.14 of the Stipulation, shall have no further force and effect with respect to the Parties and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any such order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees and expenses, and interest awarded by the Court to Lead Counsel or Lead Plaintiff shall constitute grounds for cancellation or termination of the Stipulation.

      5.7     The Preliminary Approval Order shall provide that, to be valid and timely, requests for exclusion shall be received by the Claims Administrator no later than twenty-one (21) calendar

days prior to the Settlement Hearing.  Upon receipt by the Claims Administrator of any request for exclusion pursuant to the Notice (whether or not such request is timely), Lead Counsel shall promptly, and in no event no later than three (3) calendar days after the Claims Administrator's receipt of the request for exclusion or twenty (20) calendar days prior to the Settlement Hearing, whichever is earlier, notify Defendants' Counsel of such request for exclusion and, by email, provide copies to Defendants' Counsel of such request for exclusion and any documentation accompanying it.

5.8    Each of the Defendants warrants and represents that, as of the time the Stipulation is executed, it is not "insolvent" within the meaning of 11 U.S.C. §101(32).  If prior to the Effective Date, any Defendant files for protection under the Bankruptcy Code, or any similar law, or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Escrow Agent by or on behalf of any Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited with the Escrow Agent by others, then, at the election of Lead Plaintiff, the Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of the Defendants and that the Defendants and Lead Plaintiff and the members of the Settlement Class shall be restored to their litigation positions as of May 1, 2020.

5.9    Each of the Defendants warrants and represents, as to the payments, if any, that it makes or causes to be made pursuant to the Stipulation, that, at the time of any such payments, it will not be insolvent, nor will payment render it insolvent, within the meaning of or for the purposes of the United States Bankruptcy Code, including Sections 101 and 547 thereof.

**6.    Effect and Use of the Stipulation and Settlement**

6.1    Except as set forth in paragraph 6.2 below, the Stipulation, whether or not consummated, and whether or not approved by the Court, and any discussion, negotiation, proceeding, or agreement relating to the Stipulation, the Settlement, and any matter arising in

connection with settlement discussions or negotiations, proceedings, or agreements among the Parties, shall not be offered or received against or to the prejudice of any of the Parties or their respective counsel, for any purpose other than in an action to enforce the terms of the Stipulation, and in particular:

(i)      do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Defendants with respect to the truth of any allegation by Lead Plaintiff and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault, or wrongdoing of Defendants or any person or entity whatsoever;

(ii)     do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, or against or to the prejudice of Lead Plaintiff, or any other member of the Settlement Class as evidence of any infirmity in the claims of Lead Plaintiff, or the other members of the Settlement Class;

(iii)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants, Lead Plaintiff, any other member of the Settlement Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendants, Lead Plaintiff, other members of the Settlement Class, or their respective counsel, in any other civil, criminal, or administrative action or

proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(iv)      do not constitute, and shall not be construed against Defendants, Lead Plaintiff, or any other member of the Settlement Class, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(v)      do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Lead Plaintiff, or any other member of the Settlement Class that any of their claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

6.2    Notwithstanding paragraph 6.1 above, the Parties, and their respective counsel, may file the Stipulation or the Judgment  in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy.  The Parties may file the Stipulation or the Judgment in any action that may be brought to enforce the terms of the Stipulation or the Judgment.  All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

### 7.    <u>**MISCELLANEOUS PROVISIONS**</u>

7.1    The Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties concerning the Settlement as against the Defendants, and no representation, warranty, or inducement has been made by any Party concerning the Stipulation and its exhibits other than those contained and memorialized in such documents.

7.2     Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

7.3     The Stipulation shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes, including in the Action, and as more fully described herein.  If any provision of the Stipulation shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner that would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.  Notwithstanding the foregoing sentence, if any portion of the Releases set forth in paragraphs 2.6 and 2.7 of the Stipulation, or the provisions of paragraph 2.8 thereof, are determined to be invalid, void, or illegal, Defendants shall have the right, but not the obligation, to terminate the Stipulation.

7.4     The Parties (i) acknowledge that it is their intent to consummate the Stipulation; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation expeditiously.

7.5     The Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted by the Parties with respect to the Released Claims and Released Defendants' Claims.  Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable basis.  The Parties and their counsel agree that they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure or any other statute or court rule relating to the institution, prosecution, defense or settlement of the Action, and the Judgment shall contain a finding that all Parties and their counsel complied with the requirements of Rule 11 or any other statute or court rule with respect to the institution, prosecution, defense, and resolution of the Action.  The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties and their respective counsel and reflect a settlement that was

reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

7.6     Pending approval of the Court of the Stipulation, all proceedings in this Action shall be stayed, and all members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Defendant Parties.

7.7     The Stipulation, along with its exhibits and the Supplemental Agreement, may be amended or modified, by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

7.8     No waiver of any term or provision of the Stipulation, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Parties or their respective successors-in-interest.  No waiver of any term or provision of this Settlement, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

7.9     All of the exhibits to the Stipulation, except the Plan of Allocation to the extent incorporated in Exhibit 1 to Exhibit A hereto, and the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

7.10    The headings in the Stipulation are used for the purpose of convenience only and are not meant to have legal effect.

7.11    If any disputes arise out of the finalization of the settlement documentation or the Settlement itself prior to the submission to the Court of the application for the Preliminary Approval Order, those disputes will be resolved by the Mediator first by way of expedited telephonic mediation and, if unsuccessful, then by final, binding, non-appealable resolution by the Mediator.

7.12    Subject to paragraph 7.11 above, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

7.13    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

7.14    All agreements made and orders entered during the course of the Action relating to the confidentiality of documents and information shall survive the Stipulation.

7.15    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given: (i) when delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient via overnight delivery by FedEx or UPS (charges prepaid); or (iii) five (5) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Lead Plaintiff or to Plaintiff's Counsel:

> Guillaume Buell
> Thornton Law Firm LLP
> 1 Lincoln Street
> 13th Floor
> Boston, MA 02111

If to Defendants or to Defendants' Counsel:

> Alan Goudiss
> Shearman & Sterling LLP
> 599 Lexington Avenue
> New York, NY 10022

7.16    The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or via e-mail in pdf format shall be deemed originals.

7.17    The Stipulation shall be binding when signed, but the Settlement shall be effective only as of the Effective Date.

7.18    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

7.19    The Stipulation, its exhibits, and the Supplemental Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Florida, and the rights and obligations of the Parties with respect to the Stipulation, its exhibits, and the Supplemental Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Florida without regard to conflicts of laws.

7.20    The Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, and all Parties have contributed substantially and materially to the preparation of the Stipulation.

7.21    All counsel and any other person executing the Stipulation and any of the exhibits hereto, or any related Settlement document, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

7.22    Lead Plaintiff represents and warrants that none of the Lead Plaintiff's claims or causes of action referred to in this Action or the Stipulation have been assigned, encumbered, or in any manner transferred in whole or in part.

7.23    Except as otherwise provided herein, each Party shall bear its own costs.

**IN WITNESS WHEREOF**, the Parties have caused the Stipulation to be executed, by their duly authorized attorneys, as of June 25, 2020.

Respectfully Submitted,

_Cullin O'Brien /s/_
Cullin O'Brien
Florida Bar No. 0597341
CULLIN O'BRIEN LAW, P.A.
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Tel:  (561) 676-6370
Fax:  (561) 320-0285
Email:  cullin@cullinobrienlaw.com

_Liaison Counsel_

Guillaume Buell (admitted _pro hac vice_)
THORNTON LAW FIRM LLP
1 Lincoln Street
Boston, Massachusetts 02111
Tel:  (617) 720-1333
Fax:  (617) 720-2445
Email:  gbuell@tenlaw.com

Shannon L. Hopkins (admitted _pro hac vice_)
Stephanie Bartone (admitted _pro hac vice_)
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel:  (212) 992-4523
Fax:  (866) 367-6510
Email:  shopkins@zlk.com
Email:  sbartone@zlk.com

_Lead Counsel and Counsel for Lead Plaintiff_

LABATON SUCHAROW LLP
Jonathan Gardner (admitted _pro hac vice_)
Christine M. Fox (admitted _pro hac vice_)
140 Broadway
New York, New York 10005
Tel:  212-907-0700
jgardner@labaton.com
cfox@labaton.com

_Additional Counsel for Lead Plaintiff_

Scott G. Hawkins
Florida Bar No. 460117
Joanne M. O'Connor
Florida Bar No. 498807
JONES FOSTER, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel:  (561) 659-3000
Fax:  (561) 650-5300
Email:  shawkins@jonesfoster.com
Email:  joconnor@jonesfoster.com

Alan S. Goudiss*
Brian H. Polovoy*
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel:  (212) 848-4000
Fax:  (212) 848-7179
Email:  agoudiss@shearman.com
Email:  bpolovoy@shearman.com
*pro hac vice*

_Counsel for Defendants Dycom Industries,
Inc., Steven E. Nielsen and Andrew DeFerrari_

Respectfully Submitted,

*Joanne M. O'Connor*

| | |
|---|---|
| _____ | _____ |
| Cullin O'Brien | Scott G. Hawkins |
| Florida Bar No. 0597341 | Florida Bar No. 460117 |
| CULLIN O'BRIEN LAW, P.A. | Joanne M. O'Connor |
| 6541 NE 21st Way | Florida Bar No. 498807 |
| Fort Lauderdale, Florida 33308 | JONES FOSTER, P.A. |
| Tel:  (561) 676-6370 | 505 South Flagler Drive, Suite 1100 |
| Fax:  (561) 320-0285 | West Palm Beach, Florida 33401 |
| Email:  cullin@cullinobrienlaw.com | Tel:  (561) 659-3000 |
| | Fax:  (561) 650-5300 |
| *Liaison Counsel* | Email:  shawkins@jonesfoster.com |
| | Email:  joconnor@jonesfoster.com |

_____

Guillaume Buell (admitted *pro hac vice*)
THORNTON LAW FIRM LLP
1 Lincoln Street
Boston, Massachusetts 02111
Tel:  (617) 720-1333
Fax:  (617) 720-2445
Email:  gbuell@tenlaw.com

_____

Alan S. Goudiss*
Brian H. Polovoy*
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel:  (212) 848-4000
Fax:  (212) 848-7179
Email:  agoudiss@shearman.com
Email:  bpolovoy@shearman.com
*pro hac vice*

_____

Shannon L. Hopkins (admitted *pro hac vice*)
Stephanie Bartone (admitted *pro hac vice*)
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel:  (212) 992-4523
Fax:  (866) 367-6510
Email:  shopkins@zlk.com
Email:  sbartone@zlk.com

*Counsel for Defendants Dycom Industries,*
*Inc., Steven E. Nielsen and Andrew DeFerrari*

*Lead Counsel and Counsel for Lead Plaintiff*

LABATON SUCHAROW LLP
Jonathan Gardner (admitted *pro hac vice*)
Christine M. Fox (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Tel:  212-907-0700
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel for Lead Plaintiff*

Respectfully Submitted,

_____

Cullin O'Brien
Florida Bar No. 0597341
CULLIN O'BRIEN LAW, P.A.
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Tel:  (561) 676-6370
Fax:  (561) 320-0285
Email:  cullin@cullinobrienlaw.com

*Liaison Counsel*


_____

Guillaume Buell (admitted *pro hac vice*)
THORNTON LAW FIRM LLP
1 Lincoln Street
Boston, Massachusetts 02111
Tel:  (617) 720-1333
Fax:  (617) 720-2445
Email:  gbuell@tenlaw.com


_____

Shannon L. Hopkins (admitted *pro hac vice*)
Stephanie Bartone (admitted *pro hac vice*)
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel:  (212) 992-4523
Fax:  (866) 367-6510
Email:  shopkins@zlk.com
Email:  sbartone@zlk.com

*Lead Counsel and Counsel for Lead Plaintiff*

LABATON SUCHAROW LLP
Jonathan Gardner (admitted *pro hac vice*)
Christine M. Fox (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Tel:  212-907-0700
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel for Lead Plaintiff*

_____

Scott G. Hawkins
Florida Bar No. 460117
Joanne M. O'Connor
Florida Bar No. 498807
JONES FOSTER, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel:  (561) 659-3000
Fax:  (561) 650-5300
Email:  shawkins@jonesfoster.com
Email:  joconnor@jonesfoster.com

*Alan Goudiss*
_____

Alan S. Goudiss*
Brian H. Polovoy*
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel:  (212) 848-4000
Fax:  (212) 848-7179
Email:  agoudiss@shearman.com
Email:  bpolovoy@shearman.com
*pro hac vice*

*Counsel for Defendants Dycom Industries,
Inc., Steven E. Nielsen and Andrew DeFerrari*