**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|   |   |
|---|---|
| JENNIFER TUNG, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>DYCOM INDUSTRIES, INC., STEVEN E. NIELSEN and ANDREW DEFERRARI,<br><br>     Defendants. | Case No. 9:18-cv-81448-RAS<br><br><u>CLASS ACTION</u><br><br>Judge Raag Singhal |

**LEAD COUNSEL'S MOTION FOR**
**<u>ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ................................................................................... 1

II.    ARGUMENT ............................................................................................................. 3

    A.    The appropriate method for awarding attorneys' fees in the Eleventh Circuit is based on a reasonable percentage of the recovery. ................................................. 3

    B.    The Requested Fee of 29% is Fair and Reasonable ............................................... 4

    C.    Lead Plaintiff's Endorsement of the Requested Fee Supports Its Approval .......... 5

    D.    The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable .... 5

        1.    The Time and Labor Required .................................................................... 6

        2.    The Novelty and Difficulty of the Questions Involved ............................. 8

        3.    The Skill, Experience, Reputation and Ability of Plaintiff's Counsel, and its relationship with Lead Plaintiff. ..................................................... 10

        4.    The Preclusion of Other Employment ....................................................... 11

        5.    The Customary and Contingent Nature of the Fee .................................... 11

        6.    The Amount Involved and Results Achieved ............................................ 13

        7.    The Undesirability of the Case .................................................................. 13

        8.    Awards in Similar Cases ............................................................................ 14

        9.    The Time Required to Reach the Settlement ............................................. 14

        10.    The Reaction of the Class .......................................................................... 15

    E.    Lead Counsel's Request for Payment of Litigation Expenses is Fair and Reasonable ......................................................................................................... 15

III.    CONCLUSION ....................................................................................................... 16

## TABLE OF AUTHORITIES

CASES                                                            PAGE(S)

*Allapattah Servs.* v. *Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) .................................. 14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)........ 12

*Behrens* v. *Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988),
    *aff'd*, 899 F.2d 21 (11th Cir. 1990)................................................................... 12

*Berman* v. *GM Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 200947 (S.D. Fla. Nov. 15, 2019) ......... 13

*Boeing Co.* v. *Van Gemert*, 444 U.S. 472 (1980) ........................................................ 3

*Burns* v. *Falconstor Software, Inc.*, 2014 U.S. Dist. LEXIS 203061 (E.D.N.Y. Apr. 10, 2014)... 4

*Camden I Condo. Ass'n, Inc.* v. *Dunkle*, 946 F.2d 768 (11th Cir. 1991)............................. *passim*

*Carpenters Health & Welfare Fund* v. *Coca-Cola Co.*,
    587 F. Supp. 2d 1266 (N.D. Ga. 2008) .............................................................. 15

*In re Carter's Sec. Litig.*, 2012 WL 12877943 (N.D. Ga. May 31, 2012)..................................... 5

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................... 12

*Columbus Drywall & Insulation, Inc.* v. *Masco Corp.*,
    2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ...................................... 7, 10, 11

*David* v. *Am. Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ...................... 10

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ......................... 3, 13

*Dukes* v. *Air Canada*, 2020 WL 496144 (M.D. Fla. Jan. 30, 2020) ............................................. 4

*In re Equifax Inc. Customer Data Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020).......................................................... *passim*

*Faught* v. *Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2012)............................................ 3

*In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698 (N.D. Ga. May 22, 2009) ................. 12, 13

*Hanley* v. *Tampa Bay Sports & Entm't LLC*, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)........ 4

*Ingram* v. *Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)......................................................... 7

*Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)............................. 5, 10

*Missouri* v. *Jenkins*, 491 U.S. 274 (1989)..................................................................................... 6

*In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222 (N.D. Ga. Nov. 9, 2011).........................7, 15

*Norman* v. *Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988)........................11

*In re OCA, Inc. Sec. & Derivative Litig.*,
        2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009)....................................................4

*Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...............................7

*In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852 (M.D. Fla. Oct. 5, 2017)...........................6, 15

*Ressler* v. *Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992)...........................................................7, 12

*Robbins* v. *Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997),
        *reh'g en banc denied,* 129 F.3d 617 (11th Cir. 1997).....................................................12

*Sands Point Partners, LP* v. *Pediatrix Med. Group, Inc.*,
        2002 U.S. Dist. LEXIS 25721 (S.D. Fla. May 3, 2002) ....................................................4

*Torres* v. *Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..........14

*Waters* v. *Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999)....................................4, 7

## OTHER AUTHORITIES

Laarni T. Bulan and Laura E. Simmons, SECURITIES CLASS ACTION SETTLEMENTS, 2019
        REVIEW AND ANALYSIS (Cornerstone Research) (2020) ...................................................13

Lead Counsel Levi & Korsinsky, LLP ("L&K") and Thornton Law Firm LLP ("Thornton") respectfully submit this memorandum of law in support of their motion, on behalf of Plaintiff's Counsel, for an award of attorneys' fees in the amount of 29% of the Settlement Fund, which will include any accrued interest.[1] Lead Counsel also seeks $104,028.19 for Litigation Expenses incurred by Plaintiff's Counsel.

## I.   PRELIMINARY STATEMENT

The proposed Settlement provides for a cash payment of $9,500,000 in exchange for the resolution of all claims in the Action and represents an excellent result. This significant recovery was achieved after nearly two years of hard-fought litigation against highly skilled defense counsel and extensive negotiations by experienced and skilled attorneys that specialize in securities litigation. In undertaking this litigation on a fully contingent basis, counsel faced numerous challenges to proving liability, loss causation, and damages that raised serious risks of no recovery, or a significantly lesser recovery than the Settlement, for the Settlement Class.

The prosecution and settlement of this litigation required significant efforts on the part of Lead Counsel. As detailed in the Buell Declaration,[2] Lead Counsel and additional Plaintiff's counsel vigorously pursued this litigation from its outset by, among other things: (i) conducting a comprehensive investigation into the claims asserted in the Action, including reviewing publicly

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 25, 2020 (ECF No. 85-2) or in the Declaration of Guillaume Buell in support of (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Buell Declaration"), filed herewith. Citations to "¶___" refer to paragraphs in the Buell Declaration and citations to "Ex. ___" refer to exhibits in the Buell Declaration. Unless otherwise indicated, all emphasis is added and internal citations are omitted.

[2] The Buell Declaration contains detailed descriptions of, *inter alia*: the nature of the claims asserted in the Action (¶¶16, 23); the history, prosecution, and settlement of the Action (¶¶16-31); the risks and uncertainties of continued litigation of the Action (¶¶33-50); and the services Plaintiff's Counsel Provided for the benefit of the Settlement Class (¶¶76-79).

available information regarding the Company and interviewing or speaking with over 100 former employees of Dycom and its subsidiaries; (ii) researching, drafting, and filing a detailed 127-page amended complaint based on that investigation; (iii) successfully opposing Defendants' motions to dismiss; (iv) analyzing Defendants' mediation statement and exhibits; (v) consulting with experts concerning damages, valuation, and loss causation; (vi) reviewing due diligence discovery in connection with the Settlement; and (vii) engaging in extensive settlement negotiations, which included participation in a full-day mediation session, under the auspices of an experienced and highly respected mediator, Layn Phillips, Esq., a former United States District Court Judge.

The Settlement that was achieved through Lead Counsel's efforts is a particularly favorable result considering the significant hurdles that Lead Plaintiff would have had to overcome to prevail in this complex securities fraud litigation. As further detailed below and in the Buell Declaration, Lead Counsel faced numerous substantial challenges in establishing liability, loss causation, and damages in the Action. Despite these risks, Plaintiff's Counsel collectively worked 2,552.05 hours over the course of nearly two years to achieve the Settlement, all on a contingent-fee basis with no assurance of ever being paid.

As compensation for Plaintiff's Counsel's efforts on behalf of the Class and the risks of nonpayment they faced in prosecuting the Action on a contingent basis, Lead Counsel seeks attorneys' fees in the amount of 29% of the Settlement Fund. The requested 29% fee is within the range of fees that courts within the Eleventh Circuit have awarded in securities and other complex class actions with comparable recoveries on a percentage basis. The requested fee also represents a modest multiplier of 1.48 on Plaintiff's Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with significant contingency risks such as this one.

Additionally, the expenses for which Plaintiff's Counsel seek payment were reasonable and necessary for the successful prosecution of the Action.

The application for fees and expenses has the full support of Lead Plaintiff. *See* Declaration of Timothy Smyth on behalf of Boston Retirement System (Ex. 3 to the Buell Declaration) (the "Smyth Declaration"), at ¶¶5-6. Lead Plaintiff is a sophisticated institutional investor that actively supervised the Action and has endorsed the requested fee as fair and reasonable in light of the result achieved in this Action, the quality of the work counsel performed, and the risks of litigation. *Id.* ¶¶3-4.  In addition, while the deadline set by the Court for Class Members to object has not yet passed, to date, no objections to the requested attorneys' fees and expenses have been received. ¶¶61, 88, 96.[3]

For the reasons discussed below and in the Buell Declaration, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable.

## II.    ARGUMENT

### A.    The appropriate method for awarding attorneys' fees in the Eleventh Circuit is based on a reasonable percentage of the recovery.

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses of that fund. *See Boeing Co.* v. *Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condo. Ass'n, Inc.* v. *Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 353 (N.D. Ga. 1993) ("The purpose of awarding fees is to compensate successful attorneys for the benefits they have achieved for the class as a result of the attorneys' efforts, for

---

[3] One request for exclusion from the Settlement has been received from a putative class member, but it does not meet the requirements for exclusion set forth in the Notice because it does not provide any information about the person's purchases or sales of Dycom stock. ¶88.

3

the risks the attorneys have taken in prosecuting a long and complex case, and for the hours and expenses the attorney has invested in the case."). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *accord Faught* v. *Am. Home Shield Corp*., 668 F.3d 1233, 1242 (11th Cir. 2012); *Waters* v. *Int'l Precious Metals Corp*., 190 F.3d 1291, 1294 (11th Cir. 1999).

### B. The Requested Fee of 29% is Fair and Reasonable

Lead Counsel seeks a fee award of 29% of the Settlement Fund. Courts within the Eleventh Circuit have found similar fees to be within the range of typical fee awards in common-fund cases. *See Camden I*, 946 F.2d at 774-75 ("[t]he majority of common fund fee awards fall between 20% to 30% of the fund," and district courts consider the middle of that range – 25% - as a "benchmark" that "may be adjusted in accordance with the individual circumstances of each case"); *In re Equifax Inc. Customer Data Breach Litig*., 2020 WL 256132, at *31 (N.D. Ga. Mar. 17, 2020) (same).

It is common for courts to approve attorneys' fee percentages higher than the amount requested by Lead Counsel. *See, e.g.*, *Dukes* v. *Air Canada*, 2020 WL 496144, at *1 (M.D. Fla. Jan. 30, 2020) (approving attorneys' fees and costs representing 33.3% of settlement fund); *Hanley* v. *Tampa Bay Sports & Entm't LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding fee larger than 1/3 of the common settlement fund and noting that "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); *Sands Point Partners, LP* v. *Pediatrix Med. Group, Inc.*, 2002 U.S. Dist. LEXIS 25721, at *8 (S.D. Fla. May 3, 2002) (30% of a $12 million settlement). In addition, the 29% fee request is also consistent with fees awarded by courts in other Circuits in similarly sized securities class action settlements.[4] In

---

[4] *See, e.g., Burns* v. *Falconstor Software, Inc.*, 2014 U.S. Dist. LEXIS 203061, at *26-27 (E.D.N.Y. Apr. 10, 2014) (finding 30% to be the median of requested attorneys' fees when the

sum, when judged against Eleventh Circuit precedent, and compared to fees awarded in class action settlements of similar magnitude, the requested 29% fee is fair and reasonable.

### C.   Lead Plaintiff's Endorsement of the Requested Fee Supports Its Approval

Lead Plaintiff is a sophisticated institutional investor that took an active role in the litigation and closely supervised the work of Lead Counsel. *See* Smyth Declaration ¶¶3-4. Lead Plaintiff has approved the requested fee as fair and reasonable in light of the work performed, the recovery obtained for the Class, and the risks associated with continuing to litigate the Action. *Id.* ¶5. Lead Plaintiff's endorsement of the fee supports its approval. *See In re Carter's Sec. Litig.*, 2012 WL 12877943, at *2 (N.D. Ga. May 31, 2012) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor that was directly involved in the prosecution and resolution of the claims and who has a substantial interest in ensuring that any fees paid to Lead Counsel are duly earned and not excessive").

### D.   The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable

In *Camden I*, the Eleventh Circuit recommended that district courts consider several factors in determining whether a requested percentage fee award is reasonable, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

settlement is between $5 million and $10 million); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 U.S. Dist. LEXIS 19210, at *62-63 (E.D. La. Mar. 2, 2009) ("In reported securities cases involving funds in the $5 million to $10 million range, attorneys' fee awards are generally within the 25 to 33 1/3 per cent range.").

946 F.2d at 772 n.3 (citing *Johnson* v. *Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)). A court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action." *Id*. at 775. A full consideration of these factors provides strong support for approval of the 29% fee request.

### 1. The Time and Labor Required

The time and diligent effort expended by Plaintiff's Counsel to achieve the Settlement supports the requested fee. Lead Counsel committed extensive resources to developing the challenging aspects of Lead Plaintiff's claims and overcoming the obstacles introduced by Defendants for nearly two years of hard-fought litigation. As discussed in greater detail in the Buell Declaration, Lead Counsel, among other things: (i) conducted a comprehensive investigation into the claims asserted in the Action, including reviewing publicly available information regarding the Company and interviewing former employees of Dycom and its subsidiaries (¶¶22, 76); (ii) researched, drafted, and filed a detailed amended complaint based on that investigation (¶¶22-23); (iii) successfully opposed Defendants' motions to dismiss (¶¶25-26); (iv) analyzed Defendants' mediation statement and exhibits (¶27); (v) consulted with an expert concerning damages and loss causation (¶¶52); (vi) reviewed due diligence discovery in connection with the Settlement; and (vii) engaged in extensive settlement negotiations overseen by an experienced mediator, which included participation in a full-day mediation session (¶¶27-28).

In total, Plaintiff's Counsel expended over 2,550 hours in this litigation with a resulting lodestar value of $1,863,660.25 (counsel's hours multiplied by their hourly rates). ¶79.[5] The time

---

[5] This lodestar amount is based on Plaintiff's Counsel's current hourly rates. The Supreme Court has approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *Missouri* v. *Jenkins*, 491 U.S. 274, 284 (1989).

and labor expended by Plaintiff's Counsel amply support the requested fee. *See In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at \*2 (M.D. Fla. Oct. 5, 2017) (In determining an appropriate fee, the court considered how "Lead Counsel also demonstrated the substantial time and effort they put into the case as well as the uncertainty of the ultimate outcome").

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 29% award. *See, e.g.*, *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). Here, based on the $9,500,000 Settlement Fund, the requested 29% fee award (or $2,755,000 before interest) represents a multiplier of approximately 1.48 on Plaintiff's Counsel's total lodestar.[6] Given that multipliers ***between 2 and 5*** are commonly awarded in complex class actions with substantial contingency risks, the 1.48 multiplier requested here confirms the reasonableness of the requested fee. *In re Equifax*, 2020 WL 256132, at \*39 (awarding fee representing 2.62 multiplier and describing it as "consistent with multipliers approved in other cases"); *Columbus Drywall & Insulation, Inc.* v. *Masco Corp.*, 2012 WL 12540344, at \*5, n.4 (N.D. Ga. Oct. 26, 2012) (noting multiplier of 4 times lodestar is "well within" the accepted range); *Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (finding that lodestar multipliers "in large and complicated class actions" tend to range from 2.26 to 4.5); *Ingram* v. *Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4).

---

[6] The multiplier is calculated by dividing the fee request by the lodestar that Plaintiff's Counsel incurred. The actual realized multiplier will decline over time, as Plaintiff's Counsel will devote additional attorney time to preparing for the Settlement Hearing, overseeing the processing of Claims by the Claims Administrator, and overseeing the distribution of the Settlement proceeds to Settlement Class Members with valid Claims.

## 2.    The Novelty and Difficulty of the Questions Involved

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law, *Ressler* v. *Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992), and "securities class action litigation is 'notably difficult and notoriously uncertain.'" *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011). This Action was no exception. As further detailed in the Buell Declaration, Lead Plaintiff's claims faced a number of substantial challenges to establishing liability and proving damages in this Action. Defendants contested their liability on falsity and scienter grounds and raised numerous issues regarding loss causation and damages.

*First*, Lead Plaintiff and its counsel would have faced substantial challenges in proving that Defendants' statements were false when made. ¶¶36-38. While Lead Plaintiff would attempt to prove Defendants' statements were false when made, Defendants would have argued that the alleged false and misleading statements were non-actionable, forward-looking statements protected by the Safe Harbor of the PSLRA, and that others were statements of "opinion" or corporate puffery that could not be shown to be false or misleading. ¶¶39-40. In further support of their position, Defendants would have continued to claim that a number of the statements were not false in any respect because there was no severe or widespread pattern of permitting delays or customer cancellations. ¶41. Essentially, there was a significant risk that, had the litigation continued to trial, a jury could have found Defendants' statements to be vague or general and not triggering liability for fraud.

*Second*, there would have been significant risk for Lead Plaintiff in proving Defendants made the alleged false and misleading statements with scienter. Defendants would have continued to argue that Lead Plaintiff could not prove that any Defendant knowingly made statements with the requisite intent to defraud or with severe recklessness, especially because Defendants argued

8

that they believed they had adequately informed the market that the various projections they provided came with disclosed limitations. ¶45. Defendants would have further argued that the problems Dycom faced were issues concerning the timing of revenue recognition, and the fact that Dycom exceeded analyst estimates in the quarter following the close of the Class Period would arguably provide Defendants with an opposing inference of scienter. *Id*. Further, Defendants would have continued to argue that the Individual Defendants had substantial stock holdings that they held throughout the Class Period, further undercutting an inference of scienter, according to Defendants. *Id*.

While Defendants unsuccessfully asserted certain of these arguments in their motion to dismiss, when the Court was required to accept all allegations in the Complaint as true, there was a significant possibility that Defendants could have succeeded in these arguments at subsequent stages of the litigation when allegations in the Complaint would need to be supported by admissible evidence. ¶46. On all these issues, Lead Plaintiff would have to prevail at several stages – on a motion for summary judgment and at trial, and if it prevailed on those, on the appeals that would likely follow – which would likely have taken years. ¶47.

*Third*, assuming *arguendo* that liability was established, Lead Plaintiff had additional challenges in establishing loss causation and damages.  While Defendants raised the issue of loss causation in their motion to dismiss and the Court rejected that argument, the threshold for alleging loss causation at the pleading stage is not onerous, and these arguments could have been presented with more force at summary judgment or at trial where Defendants' position would be supported by testimony, evidence, and affidavits opining that there was no loss causation, and limited or no damages. ¶48. Defendants would continue to argue that Lead Plaintiff did not show the false and misleading statements were financially guiding investors. Using specific dates in which new

information about the statements alleged to be false and misleading was disclosed, Defendants would attempt to disprove the financial guidance aspect of loss causation.

Moreover, Defendants would contend that Lead Plaintiff bears the burden of proof in "disaggregating" the impact of confounding, non-fraud information from that of any actionable disclosures and that Lead Plaintiff would not be able to so. ¶50. These disputed issues would have boiled down to a "battle of experts" at trial. Defendants would have undoubtedly presented a well-qualified expert who would opine that the Class's damages were small or nonexistent.

These arguments presented significant risks to the Settlement Class that they would not be able to recover at all, or would recover substantially reduced damages. Thus, Lead Counsel faced multiple difficult and significant obstacles in prosecuting this Action. However, Lead Counsel overcame these obstacles and achieved an excellent result for the Class. Success in the face of these obstacles strongly supports the requested fee award.

### 3.       The Skill, Experience, Reputation and Ability of Plaintiff's Counsel, and its relationship with Lead Plaintiff.

Two of the *Johnson* factors that the Court should consider are "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David* v. *Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall,* 2012 WL 12540344, at *4. "The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation." *Id.*

From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class. As noted above, this case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation. Lead Counsel practices

extensively in the highly challenging field of complex class action litigation and are some of the nation's leading securities class action litigation firms. *See* Buell Decl. Exhibits 9-10. Without question, Lead Counsel's skills and experience were an important factor in obtaining the excellent result achieved in this Settlement.

This Court should also consider "the quality of the opposition" the plaintiff's attorneys faced in awarding Lead Counsel a fee. *See Columbus Drywall*, 2012 WL 12540344, at *4 (finding the capabilities of all attorneys favored an award of attorney's fees because the "settlement would not have been possible absent skilled counsel representing the class"). Here, Defendants were represented by Shearman & Sterling LLP, a large defense firm that vigorously contested the Action. Lead Counsel's ability to obtain a favorable Settlement for the Class despite this formidable legal opposition confirms the quality of the representation that Lead Counsel provided. Therefore, this factor also supports the fee requested.[7]

### 4. The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case – over 2,550 hours (¶79) – was time that Plaintiff's Counsel did not devote to other matters. Moreover, Plaintiff's Counsel expended the time and effort without any assurance that they would be successful or that they would ever be compensated for their hard work. Accordingly, this factor also supports the requested fee.

### 5. The Customary and Contingent Nature of the Fee

The Court should also consider two factors that are well reviewed together: the customary fee and whether it is fixed or contingent. The "customary" fee in a class action lawsuit of this

---

[7] The Court may also consider the nature and length of the professional relationship with the client. Here, Thornton and additional counsel Labaton have represented the Lead Plaintiff in several securities actions.  L&K has not previously represented Lead Plaintiff.

nature is a contingency fee because virtually no class member possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis. *See Norman* v. *Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1298-99 (11th Cir. 1988).

The contingent nature of Plaintiff's Counsel's fees should be given substantial weight in assessing the requested fee award. *See In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("[T]he contingent fee risk is an important factor in determining the fee award."). Courts have consistently recognized that the risk that class counsel could receive no recovery is a major factor in determining the award of attorney's fees. *See Ressler*, 149 F.R.D. at 654-55 ("The substantial risks of this litigation abundantly justify the fee requested . . . ."). "A contingency fee arrangement often justifies an increase in the award of attorneys' fees," *Behrens* v. *Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "because if the case is lost a lawyer realizes no return for investing time and money in the case." *Equifax*, 2020 WL 256132, at *33.

Success in contingent litigation such as this is never assured. In other securities class actions, plaintiffs' counsel have suffered major defeats after years of litigation and investing millions of dollars of time but received no compensation at all. Even a victory at trial is not a guarantee of success.[8] As noted above, Lead Plaintiff's claims faced multiple hurdles that could have precluded or substantially limited any recovery. Indeed, because the fee in this matter was entirely contingent, the only certainties was that there would be no fee without a successful result,

---

[8] *See, e.g., Robbins* v. *Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997), *reh'g en banc denied*, 129 F.3d 617 (11th Cir. 1997)  (overturning $81 million jury verdict*); In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning estimated $42 million jury verdict for plaintiff class, and granting judgment as a matter of law to defendants).

and that such a result would be realized, if at all, only after considerable and difficult effort. Accordingly, the substantial risks of the Action also justify the requested fee.

### 6. The Amount Involved and Results Achieved

"It is [also] well-settled that one of the primary determinates of the quality of the work performed is the result obtained." *Friedman's*, 2009 WL 1456698, at *3 (alternation in original); *see also Domestic Air*, 148 F.R.D. at 351 ("The most important element in determining" class counsel's fee "is the result obtained for the class through the efforts of such counsel.").

As noted above, the excellent recovery obtained was accomplished despite the substantial difficulties of proving liability for securities fraud and the risks of establishing loss causation and damages in this case. The $9,500,000 cash Settlement that Lead Counsel obtained represents 5.7% of the Settlement Class's estimated recoverable damages. *See* ¶¶51-52. The $9,500,000 Settlement exceeds the Eleventh Circuit inflation-adjusted median of $6.3 million in securities class action settlements in the Eleventh Circuit from 2010 through 2019, representing an average recovery of 5.2% of estimated damages. *See* Laarni T. Bulan and Laura E. Simmons, SECURITIES CLASS ACTION SETTLEMENTS, 2019 REVIEW AND ANALYSIS, at 20 (Cornerstone Research) (2020). In sum, the recovery obtained in this Action also supports approval of the requested fee.

### 7. The Undesirability of the Case

In certain circumstances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. *Camden I*, 946 F.2d at 772 n.3; *see Berman* v. *GM Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 200947, at *37 (S.D. Fla. Nov. 15, 2019) ("Class Counsel's willingness to assume such risk makes a reasonable premium appropriate"). Inherently, there are risks in financing and prosecuting a complex litigation of this type. When Lead Counsel undertook representation of Lead Plaintiff in this Action, it was aware that Lead Counsel would have to spend

13

substantial time and money and face significant risks without any assurance of being compensated for their efforts. *See Torres* v. *Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight."). Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter many firms. *See Allapattah Servs.* v. *Exxon Corp.*, 454 F. Supp. 2d 1185, 1216 (S.D. Fla. 2006) (recognizing "the risks to Class Counsel in accepting representation at the early stages of the proceedings"). Thus, this factor also weighs in favor of awarding the requested fee.

### 8.      Awards in Similar Cases

As discussed in Section II.B, Lead Counsel's requested fee of 29% falls within the range of fees awarded in class action cases in this Circuit. *See Camden I*, 946 F.2d at 774-75. Moreover, as shown above, courts in this District and Circuit have frequently awarded higher percentage fees in comparable class action settlements. *See* Section II.B, *supra*. Accordingly, this factor strongly supports the reasonableness of the requested fee.

### 9.      The Time Required to Reach the Settlement

As described in the Buell Declaration, a substantial amount of time and effort was required to resolve the Action and the Settlement was achieved after nearly two years of litigation. This case is not a case where the parties reached an early settlement. To the contrary, before any agreement to settle was reached, Lead Counsel vigorously opposed Defendants' motions to dismiss, conducted a significant and thorough investigation, and engaged in substantial settlement and mediation efforts. ¶¶22-23, 25-28. This significant amount of time expended on the

prosecution of the claims, totaling over 2,550 hours dedicated to the Action by Plaintiff's Counsel, further supports the requested fee award.

> **10.     The Reaction of the Class**

Through September 7, 2020, 36,029 copies of the Notice have been mailed to potential Settlement Class Members and their nominees, and the Summary Notice was published in *Investor's Business Daily* and transmitted over *AccessWire*. *See* Declaration of Eric Nordskog, submitted by the Court-approved Claims Administrator, A.B. Data ("Nordskog Declaration"), at ¶¶8-9. The Notice advised Class Members that Lead Counsel would apply for fees not to exceed 29% of the Settlement Fund. While the deadline for filing objection to the fee is not until September 22, 2020, to date, there have been no filed objections to the requested fee. *See id.* ¶12.[9] This weighs in favor of awarding the requested fees. *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2017).

> **E.     Lead Counsel's Request for Payment of Litigation Expenses is Fair and Reasonable**

Lead Counsel also requests payment of $104,028.19 for the expenses incurred by Plaintiffs' Counsel in prosecuting the Action. It is well-established that "class counsel's reasonable and necessary out-of-pocket expenses should be reimbursed." *Carpenters Health & Welfare Fund* v. *Coca-Cola Co*., 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008); *see also NetBank*, 2011 WL 13353222, at *4 ("It has long been held that 'plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action.'").

The expenses for which Lead counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients in non-contingent cases who are

---

[9] Should any objections be filed, they will be addressed in Lead Counsel's reply papers to be filed on or before October 6, 2020.

billed by the hour. The expenses include, among other things, costs for experts, online research, court fees, mediation fees, telephone, photocopying, postage, and out-of-town travel. ¶¶92-95. A complete breakdown of the expenses incurred by Plaintiff's Counsel in each category is included in Exhibit 8 to the Buell Declaration.

The Notice informed potential Class Members that Lead Counsel would apply for payment of Litigation Expenses in an amount not to exceed $350,000. *See* Notice ¶¶5, 35.  The total amount of Litigation Expenses requested by Plaintiff's Counsel is $104,028.19, an amount substantially below the figure listed in the Notice. To date, there have been no objections to the request for expenses.

Because the expenses incurred by Plaintiff's Counsel are of the type for which payment is regularly approved in common fund cases and were essential to the successful prosecution and resolution of the Action, the requested expenses should be approved. *See Equifax Customer Data Breach*, 2020 WL 256132, at *40 (awarding expenses for "court reporter fees; document and database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings and hearings; paying the mediator; and other customary expenditures" and finding such expenses "are reasonable and were necessarily incurred on behalf of the class").

## III.   CONCLUSION

For the reasons discussed above and in the Buell Declaration, Lead Counsel respectfully request that the Court: (i) award attorneys' fees in the amount of 29% of the Settlement Fund, plus interest earned at the same rate as earned by the Settlement Fund and (ii) award $104,028.19 in payment of the reasonable Litigation Expenses that Plaintiff's Counsel incurred in prosecuting the Action.

Date: September 8, 2020

Respectfully submitted,

 /s/ *Cullin O'Brien*                          

Cullin O'Brien
Florida Bar No. 0597341
CULLIN O'BRIEN LAW, P.A.
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Tel: (561) 676-6370
Fax: (561) 320-0285
Email: cullin@cullinobrienlaw.com

*Liaison Counsel*

Guillaume Buell (admitted pro hac vice)
THORNTON LAW FIRM LLP
1 Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 720-1333
Fax: (617) 720-2445
Email: gbuell@tenlaw.com

Shannon L. Hopkins (admitted pro hac vice)
Stephanie Bartone (admitted pro hac vice)
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (212) 992-4523
Fax: (866) 367-6510
Email: shopkins@zlk.com
Email: sbartone@zlk.com

*Lead Counsel and Proposed Class Counsel*

LABATON SUCHAROW LLP
Carol C. Villegas (admitted pro hac vice)
Christine M. Fox (admitted pro hac vice)
140 Broadway
New York, New York 10005
Tel: 212-907-0700
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel for Lead Plaintiff*

17

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to the Stipulation, Defendants take no position with respect to the relief sought.


## CERTIFICATE OF SERVICE

I hereby certify that September 8, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

/s/ *Cullin O'Brien*
Cullin O'Brien

18